[No. 15591.  Department One.  January 12, 1920.]

M. G. NAYLOR, *Appellant,* v. C. O. LOVELL, *Respondent.*[1]

BILLS AND NOTES (127)—REFORMATION OF INSTRUMENTS (6, 19)—
MISTAKE—EVIDENCE—ADMISSIBILITY. In an action upon a mortgage
note and to reform and foreclose the mortgage, alleged in the com-
plaint to have fixed the due date by mistake, parol evidence of the
mistake is admissible.

EVIDENCE (104)—HEARSAY—ADMISSIBILITY. In an action to re-
form and foreclose a mortgage, alleged to have fixed the due date
by mistake, the positive evidence of the persons present as to what
occurred is not inadmissible as hearsay.

BILLS AND NOTES (64, 138)—BONA FIDE PURCHASERS—NOTICE OF
MISTAKE—EVIDENCE—SUFFICIENCY. In an assignee's action on a
mortgage note and to reform and foreclose the mortgage, findings
that by mistake the mortgage fixed the due date one year in advance
of the maturity of the note, and that plaintiff had notice of the
mistake when he purchased at a large discount, are sustained where
the discrepancy appeared on the face of the papers, and he was
told of the two dates, and he admitted having had some intimation
of it; the presumption of good faith attaching by virtue of Rem.
Code, § 3447, being in such case overcome by clear and satisfactory
evidence.

Appeal from a judgment of the superior court for
Yakima county, Taylor, J., entered May 1, 1919, upon
findings in favor of the defendant, in an action to fore-
close a mortgage, tried to the court.  Affirmed.

*Charles F. Bolin* and *Snively & Bounds,* for appel-
lant.

*Lyons & Orton,* for respondent.

MITCHELL, J.—On May 7, 1918, Lewis Pearne Bond
sold and conveyed to C. O. Lovell eighty acres of land
situated in Yakima county, Washington, in considera-
tion of a cash payment of $6,000 and a note secured by
a mortgage on the land in the sum of $10,000.  The

[1] Reported in 186 Pac. 855.

note as executed was made payable on or before March 1, 1919, "with interest thereon, in like gold coin, at the rate of three per cent per annum from maturity, for value received, interest to be paid at maturity;" while the mortgage provided: "This conveyance is intended as a mortgage, and is given to secure the payment of $10,000, together with the interest thereon at the rate of three per cent per annum from March 1, 1919, until maturity, and at six per cent per annum after maturity, payable annually according to the terms of one certain promissory note bearing date May 7, 1918, payable on or before March 1, 1920, to the order of Lewis Pearne Bond, etc."

The mortgage was duly filed and recorded in the office of the auditor of Yakima county on May 8, 1918. To accommodate the maker, for the purpose of making the payments, the note and mortgage were left with the Central Bank at Toppenish, Washington. It appears also that the note and mortgage were at one time used by the owner as collateral in a loan to him by the bank. On September 3, 1918, a payment of $2,750, made on the principal of the note and mortgage, was duly indorsed on the note. On January 10, 1919, in consideration of the sum of $6,475—a discount of $775 on the then face value of the note—the plaintiff, M. G. Naylor, purchased the note and mortgage, and on March 17, 1919, commenced this action for judgment on the note and foreclosure of the mortgage.

In the complaint it is alleged the mortgage inadvertently and by mistake fixes the due date March 1, 1920, instead of March 1, 1919, necessitating reformation accordingly, which is prayed for in the foreclosure proceedings. The answer denies there was any mistake as to the date of maturity of the mortgage, and alleges a mistake in the due date expressed in the note; that it was intended by both the maker and the

payee that the note should be due and payable and bear interest as provided in the mortgage; and that plaintiff had, at and prior to his purchase of the note, full notice, both actual and of record, of said mistake. The answer prays for a correction and reformation of the note to conform to the true agreement, and that the action be dismissed, so far as the plaintiff is concerned, as prematurely brought. Upon the trial the court was convinced in favor of the defendant's contentions, and entered findings and judgment accordingly. Plaintiff has appealed.

The assignments of error present only two main questions: First, was there a mistake in writing the note payable on or before March 1, 1919, instead of March 1, 1920, as the mortgage provided? and second, if there was such a mistake, did appellant have notice of it at and prior to the time he purchased the note and mortgage? On the first proposition, the evidence is abundant and undisputed that it was the intention of the parties that the note should fall due and bear interest as expressed in the mortgage, and that by mistake it was written otherwise in the note. It appears appellant does not dispute the convincing force of the proof in this respect, but rather insists that the testimony of the witnesses upon the subject as to what occurred at the time of execution and delivery of the note and mortgage and the way in which the mistake occurred was hearsay and not binding upon the appellant because he was not present at that time, and because it was an attempt by parol testimony to defeat the terms of the written instrument. As to the latter, it is the general rule that, where parties adopt a written instrument as a mode of contracting, it becomes a matter of both principle and policy to prevent any inferior evidence from being used either as a substitute for, or alteration of, the written contract. But it is

equally well settled there is an exception to the rule in cases seeking relief from mistake or fraud. The present case is one wherein relief is sought from an alleged mutual mistake. It is a matter of equitable cognizance, wherein justice would be defeated but for the admission of parol evidence. It is difficult to understand how it can be well claimed the evidence complained of was hearsay. It was the positive evidence of persons present and taking part in the transaction out of which, and at the time, the mistake occurred; while as to its not being binding upon appellant because he was not present, the contention is correct if he was unaware of the mistake in the note at the time he purchased it and the mortgage, otherwise not so.

On the second proposition, the evidence is against the appellant. The mortgage was on record and was purchased by appellant with the note. Upon their faces they showed a discrepancy as to the due date and interest. In negotiating the sale of the note and mortgage, the owner was represented by his father, Fred A. Bond, who testified that, in all his talks with appellant and his agent leading up to the sale, he figured with them attempting to make the sale at eight per cent discount; and yet, upon appellant's theory, a note of the face value of $7,250, secured by a mortgage on a $16,000 farm, was purchased by him at a discount of $775, less than fifty days before the maturity of the paper.

Fred A. Bond testified he had not seen the note at the time of the sale to appellant, but had examined the mortgage at the bank and told the appellant, in his negotiations with him, that the debt for which the note and mortgage were given was due March 1, 1920. A few days after the purchase by appellant, in a conversation with H. B. Miller, cashier of the bank at

Toppenish, appellant asked him if he knew the note and mortgage had different dates for maturity. On being advised in the negative (it seems the bank had not noticed the discrepancy, but, in taking the note and mortgage as collateral, had depended on the due date expressed in the mortgage), appellant told him there were two dates mentioned in the papers. Mr. Miller said, being surprised, he had appellant repeat the information, and then, according to his testimony:

"I put a rather pointed question to Mr. Naylor at that time, and I said to Mr. Naylor, 'Did you know when you bought these papers that that was the case,' and he rather hesitated and he said, 'I had some indication of it.'"

By a letter dated January 19, 1919, appellant notified respondent he had purchased the note and mortgage and that the note would become due March 1, 1919. Within a week they met (until that time they had no personal acquaintance with each other) and had a conversation in which, as testified to by respondent:

"He told me he had purchased this note and mortgage and that the note was due March 1, 1919; I said, 'I didn't understand it that way, did you,' and he said, 'Not until I saw the note, and I let you know as soon as I knew myself.'"

Appellant denies all these statements, but we are satisfied the proof is against him.

By Rem. Code, § 3447, to constitute notice of an infirmity in a negotiable instrument, the person to whom it is negotiated must have had actual knowledge of the infirmity, or knowledge of such facts that his action in taking the instrument amounted to bad faith. That is, as stated by the writers: "The rights of the holder are to be determined by the simple test of honesty and

good faith." The presumption of good faith attaches in favor of a holder who takes the instrument for value prior to its maturity, but the presumption is rebuttable. And in the present case we are convinced, as was the trial court, by what to us appears to be clear and satisfactory evidence, that the presumption in favor of appellant has been overcome; and that, at and prior to his purchase of the note and mortgage, he had such knowledge of the defect in the note as to its due date, and knowledge of such facts and circumstances relating thereto, that his conduct in taking the note with the intention of claiming it to be due as expressed on its face, and attempting to enforce payment prior to the date of maturity intended by the original parties to the note, amounted to bad faith. 8 C. J., page 496, §§ 706, 707.

The judgment denying appellant relief and correcting and reforming the note as prayed for in respondent's answer was correct, and it is affirmed.

HOLCOMB, C. J., PARKER, MACKINTOSH, and MAIN, JJ., concur.